Mr. Price and Ms. Corey, if you can turn on your systems. Ms. Corey, do you hear me well? I do, Your Honor. And I'm just a technician. And Mr. Price. Oh, I'm sorry. Okay. Yes, I can hear you just fine. Okay. We're good to go on. Our next case for argument, which is Al Gburi v. Barr case number 19-71189 petitioner goes first. Good morning, Your Honor, and may it please the court. My name is Matthew Price on behalf of petitioner Mr. Al Gburi. Under 8 CFR 1208.15, an asylum applicant is ineligible on the ground of firm resettlement only if he has received an offer of permanent resident status, citizenship, or some other type of permanent resettlement. The government bears the burden to establish the existence of such an offer. Here are the evidences that Mr. Al Gburi received a temporary permit, allowing him to reside in Brazil for one year. And he renewed that permit once or perhaps twice. The record is not entirely clear on that point. But under the plain text of the regulation and this court's precedent that does not establish an offer of permanent resettlement. And I'd like to start with the plain text. There are two key elements to the text. First, the applicant must have received an offer. And second, the offer must be for a permanent status. The dictionary definition of permanent is something that lasts indefinitely or is not expected to change. In the examples that the regulation provides that permanent residence and citizenship are the quintessential categories of a kind of permanent, unchanging status that the person would have forever. Can I just ask you a question on the standard? Is the standard in effect a firm offer of resettlement? I think the standard is an offer of firm resettlement. In other words, I mean, what the regulation says, it's you need an offer of permanent resident status, citizenship, or some other type of permanent resettlement. And so the adjective permanent modifies the type of status that needs to be given to the person in order for them to fall within the regulation. Does that answer your question, Your Honor? You have to be, you have to receive an offer that you can live in the country permanently. That's correct. That's exactly right. Okay. Yeah. So the evidence in this case at the outset just doesn't support that any such offer was given. There's literally nothing in the record showing anything other than that Mr. Gerberi simply received a temporary permit and renewed it once or perhaps twice. And the government nevertheless infers that he received an offer of permanent resettlement because this permit could be renewed indefinitely. But again, the record is completely opposite on that point. There's literally nothing in the record to support the government's view that this temporary permit could be renewed indefinitely. And all we know- Was there any evidence that the permit would convert to more of a permanent kind of arrangement? No, there is no- At a certain period of time? No, there's no evidence at all in the record that the permit would convert to any more temporary, any more permanent status. Is there some sort of unique kind of visa or what is it? Well, again, the record is quite bare about this in part because the government, though it actually possessed the actual Brazilian document, declined to put it in the record. So all we know is basically what was testified to. I haven't actually seen the document myself, but it appears to be essentially a one-year residence permit. And I think it's not uncommon for many countries to offer essentially one-year temporary residence permits. Did that allow him to work in Brazil? It allowed him to work in Brazil, but it did not allow him, for example, to leave and then re-enter Brazil. He could simply work in Brazil for that one year. Is there anything anywhere in the record that says that this document, this one-year thing, or anything else that says, welcome to Brazil, here's your, in effect, offer that you can live here permanently? There's absolutely nothing in the record that says that at all. And in fact, the only thing the record says about Brazil's willingness, or I should say unwillingness to provide any kind of permanent offer is that Brazil does not offer asylum. And so the only thing in the record at all kind of indicates that that's there. And as I understand that, whatever status he received, it didn't even allow him to leave with the guarantee that he could re-enter. That's absolutely correct, Your Honor. And so we think this case is straightforward under this court's precedent. In a case like Campo Seco Montejo, where the court held that there was no offer of firm resettlement. And in that case, the individual had received what was known as an FM3 visa issued by Mexico. And it could be renewed, but could not be converted into any kind of permit for permanent residency. And the court held that the ability to simply renew a temporary visa did not make that visa an offer of permanent resettlement. It remained a temporary visa. And what about the girlfriend exception? Well, I think the Maharaj case makes pretty clear that the girlfriend exception is no exception at all. And that the focus needs to be on the offer that's given by the government. And the government, by the foreign government. And our government can't meet its burden to establish firm resettlement by pointing to the fact that someone had an apartment and a girlfriend. I would also point the court to the Abdil case, which I think is very clear, in which the Third Circuit held that because further action would be required by the refugee periodically to renew the status, it wasn't an offer of permanent resettlement. And because it had a termination date, the offer of resettlement was by its terms only temporary in nature and not permanent. So I just have one just confirmation, I guess, as I understand it, he did receive withholding of removal. He did receive withholding of removal. That's correct, Your Honor. But he was denied asylum on the ground of firm resettlement. Right. Understood. And asylum can lead to other benefits. Right. Including, for example, permanent residence and citizenship in this country. Yes. Okay. Why don't we hear from the government? All right. Thank you, Your Honor. May it please the court, Jennifer Corey, on behalf of the Attorney General. It was the government's burden in this case to show prima facie evidence that Mr. Al-Ghabouri had established firm resettlement in Brazil. And what we were working with here was his testimony that he had a residency permit that could be renewed annually and that on that permit he could live and work in Brazil. He could seek to renew it annually. Is there any evidence that it would automatically be granted? No, there is no evidence that it would automatically be granted. And there's no guarantee for a renewable visa or permit. That's absolutely true. That's what makes it renewable. But there's also never been held that a renewable permit can't be considered a form of permanent refuge. If we did have that holding or if that policy were applied, it would be a dangerous holding because it would encourage... Why is it a question of policy? It's just a question of law. He has to have an offer that he can, you know, and the offer has to have a level of firmness. It has to be a firm offer that he could live there permanently. So aside from any policy issues, where is it here? Well, a renewable visa is by its nature indefinite. If he could put... If we're talking about burden of proof here, the government is showing, it has to show prima facie evidence, right? And our facts again, there were an annually renewable visa. If he came back and said, like, there's evidence that in four years they're not going to renew this or had some sort of evidence that... Well, what does prima facie mean to you in terms of the government's burden? Does it mean you can say, well, he has a girlfriend and there's a process for him to get a possible renewal and he has an Iraqi friend there and he's lived there for 17 months? Does that satisfy the government's burden of showing what seems to be a pretty high requirement, which is that he has a firm offer that he can live there permanently? So I just don't... I just... Maybe my understanding of prima facie is just different from yours. Well, in this process, Mr. Al-Ghabouri had two opportunities to come back with evidence to say that this wasn't for resettlement. The threshold question is, what is a prima facie burden? And what you're saying is the government can list some factors divorced from any document that permits permanent resettlement and that switches the burden to the potential immigrant to then have to prove a negative that he wasn't given the ability to live in Brazil permanently. And doesn't that just put the whole scheme on its head? I don't believe so, your honor. The burden here of prima facie is to show, as Maharaj said, some type of official status permitting the alien to reside in that country indefinitely. Now, renewable means indefinitely. Once we get... Does renewable mean indefinitely to you? It does unless the indefinite by definition means lasting for an unknown or unstated length of time and Brazil gave no indication that there was any sort of finite ending to this. As far as we know, and he never gave any sort of evidence to say that. Doesn't indefinite mean without end? It means that we don't know, right? An indefinite amount of time. And I think that the burden, the fact that the petitioner's burden could be met with just his testimony, just like in Campo Seco, Montejo, just his testimony that he had been told that threatened with not having it renewed. Or no, it's actually the court's holding there is that there's evidence to the contrary to say that, like, listen, you may not get this again, but there's no evidence here. He had a permit that was renewable and that was his testimony that he successfully renewed it and there was no end in sight. He chose to leave Brazil. What's your strongest argument to support the proposition that a renewable permit is an offer of firm resettlement? What's the strongest case that you have to support that argument? My strongest case is that a lot of countries do this. They offer instead of a what case authority, what case in the Ninth Circuit supports your argument that having a renewable permit makes the definition of firm resettlement offer? Your Honor, I don't believe that there are cases that have addressed that head on. There have always been other reasons why a firm resettlement, but head on, just a straight up renewable visa, I don't believe has been has been addressed by this court. Let me ask you, was there any attempt to look at the regulations from Brazil or the rules on how these documents work? Not in the record, Your Honor. Again... That suggests that somebody might have and decided not to do anything with it. Might have, sorry, had known the regulations. Brazil is a very sophisticated country. I'm sure they have rules and regulations that govern how these documents work. Yes, Your Honor, I agree. And I think they were just working with his testimony about what his visa was and the visa itself, which again, I think we're working with facts that often are applied to permits, right? That you can live there, you can work there. It's renewable. Do we know that for a fact that it's called a visa? I think they called it a residency permit. I'm sorry, I keep using that term. Counsel, what's your response to opposing counsel's observation that the government had the actual documents and did not present them into evidence? What's the import of that observation? I think it's the same thing I just said. Again, I think having the paper and having the testimony, the permit showed exactly what the testimony was. And this is often the case, a permit is not going to show you anything more than the fact that it is renewable, that it's annually renewable, and you can live and work on it. And so there was no... What was the reluctance of the government to actually produce the document? I don't know that firsthand. All I can say is that there was no need to introduce the document if it proved nothing more, the evidence was the same. And so in this uncontested, his testimony, he's not saying that it was any more restrictive than what his testimony said. DHS is not saying it was any more restrictive by anything. If there had been evidence that it was less restrictive than petitioner testified or any different than petitioner testified, then there would have been a reason to introduce it. Well, sometimes on the document, there will be reference to a regulation or to a statute or to something else that could enlighten us in terms of what the restrictions, if any, were on the permit. So that's why I was curious to me that the government did not introduce the permit. I will say again, I think if it had any sort of additional information, then the government would have introduced it. But we don't know that though. I can say that I can't say that firsthand. What I can say is that nobody's contesting the facts and the parameters of this of this permit. And the whole point of firm resettlement is to give refuge to people who can't put nowhere else to turn. And all the evidence in here include, and I believe the government met its burden of showing prima prima facie evidence that he could stay in Brazil. May I ask you a question? So you don't dispute the characterization of whatever this temporary document is, that it doesn't guarantee him the right to reenter Brazil if he visits another country and tries to come back, correct? Correct. So how is that consistent with a pathway to a permanent, to an offer of permanent residence in Brazil? It doesn't negate, it is a consideration, but it doesn't negate that he had refuge in Brazil. The right to live and work are really the most primary rights. I mean, he didn't have the right to travel and come back. And, and he could have said that as an exception. Again, we're talking about the prima facie burden that the government had, and he could have said as an exception to firm resettlement, this is too restrictive. This, this not having this right to leave Brazil is too restrictive to find firm resettlement. He never did. Okay. So just based on your arguments, though, you're not really pushing the girlfriend, the live there for 18 months or the, he had a friend there anymore. It's just about what you believe the document itself that he has says. Yes. Yeah. I mean, I think those facts are supportive of what the document says. I think they support the fact that he had an offer to stay there because he was establishing a life there. I see. So someone's going to, it's, it's evidence that he had an offer to stay there permanently because he had a girlfriend. It's some evidence. It's some evidence to enter into a romantic relationship. Yes. That you had the intention of staying there. Okay. Okay. Thank you, counsel. We'll hear from petitioner's counsel on rebuttal. Well, your honor, um, thank you. I mean, just very briefly, uh, with respect to the prime official prime official case, the, the government's burden is to demonstrate a prime official case of permanent, a permanent offer of resettlement, something permanent. And only after that point does the burden switch to, uh, the, the respondent to show that, uh, what on its face appears to be a permanent offer such as, you know, permanent residence is not in fact that. Uh, but here the government just didn't meet its, uh, its obligation in the first instance. And I think it's telling that counsel for the government can't identify any case to support the government's position because there is none. Um, and we would, unless the court has any further questions, uh, we would ask that the case be reversed with directive that Mr. Al Gabori be granted asylum on remand. Well, the, the VA never really, the agency never really addressed the elements of asylum. Correct. Uh, the agency did address the elements of asylum and it determined that, uh, the only reason he was denied asylum, uh, was because of the firm resettlement bar. And, and, you know, your honor, he was granted withholding of removal, which is a burden. So he's met all the elements of asylum. This is the only obstacle. And we think a reversal is in direction is warranted in this case. Okay. All right. Thank you, counsel. Thank both of you, uh, matters submitted at this time. Thank you.
judges: Paez, Rawlinson, Pregerson